We usually call the case to order first. So Mr. Bean, we'll hear from you. You may proceed. Thank you, Your Honor. Let me just ask Mr. Steele to mute his microphone while Mr. Bean is arguing and vice versa. Muting. Will do, Your Honor. May it please the Court, Richard Bean for the appellate Kansas City Life Insurance Company. This is an appellate review of a district court review of an arrested, regulated, long-term disability benefit claim decision. So we have multiple levels of standard of review to discuss today. This afternoon, in my opening argument, I'm going to give you an overview of the appellant's position. We'll turn then to the facts because the facts are very important in this case as revealed in the administrative record. Then we'll discuss the standard of review, the standards of review, and come back to the errors committed by the district court. So to summarize our argument, the district court properly chose the arbitrary and capricious standard of review but committed two interrelated errors in applying it. First, the district court erred when it misapplied the standard of review and improperly weighed evidence and failed to provide any deference to the claim fiduciary's decision as required under the arbitrary and capricious standard of review. Second, under any standard of review, either arbitrary and capricious or de novo, the district court erred when it failed to require Bernard to satisfy his burden for proof as to eligibility for benefits. And this is the ultimate error in this case. The ultimate question is whether the court erred in finding for Bernard because Bernard failed to establish on the administrative record he was unable, because of a disability, while under the care of a physician for that disability or illness, to perform the duties of his occupation as of his last day worked. On his last day worked, Bernard could and was performing the duties of his occupation, and the administrative record shows this. On his last day worked, Bernard was not under the care of a physician with a condition that he claimed disabled him. On his last day worked, and during the 26 years of his employment and in his occupation as a nurse anesthetist, he performed his duties to the satisfaction of his employer and exhibited no limitations. We'll talk more in a bit about the interview of the employer. In the administrative record, Bernard could point to no limitation that prevented him from working. On his last day worked, Bernard was terminated from employment, not because he couldn't perform the duties of his occupation, but because he violated a term of his employment agreement and a work rule. He used drugs on the job on that day. The district court concluded that there was a pre-termination of drug dependency, and from there leaped to the conclusion that that diagnosis equals disability. This is a classic case that has been presented many times in this court of a diagnosis in search of a disability, rather than a complete record of disability showing limitation and an inability to perform the material and substantial duties of the claimant's occupation. Is there any dispute that Bernard had relapsed before the last day of employment? There is no evidence in the administrative record that he had relapsed prior to his last day, other than his self-report. There's no medical evidence to support that. He was not seen by any physician. I understand he wasn't seeing a physician because he was not dealing with the problem, but I thought the administrator accepted that he had a relapse in the denial. The subsequent medical records, also depending solely upon his reports, there aren't medical tests. The only test of whether he was using drugs was the one that was taken on the day that his employer required him to. That's at 233, 234 of Appendix Volume 2. Did the administrator dispute that he had relapsed? No, no. And the question is, if he had relapsed, was he disabled? Correct. And did the administrator say that he was terminated due to serious concern for safety of the patients? No, he was terminated. Now, the employer, actually, Your Honor, in the appendix, Appendix 2 at page 283, there's a long interview where our client's representative, Sandra Kassaman, interviewed Liz Wilden of the employer. What page is she referring to? 283 of the appendix. All right. Two nurses spoke with the president of the practice, she reports, and reported that he had been using syringes and they suspected he had been using drugs. She said later in this interview he never said how long he was using them. He just admitted to that day. So they are not sure if it was just the day or longer, because there were no signs prior to that day that he was using drugs. And if there were any signs, they would have done the random drug test, and if positive, he would have been terminated. But you just said that the administrator doesn't dispute that he had relapsed earlier, so we're taking that as a given. And then the December denial letter says he was terminated due to his employer's serious concern for safety of the patients. So I assume we can take that as a given, too. Well, that is their general policy, Your Honor. Since it's a denial letter. So I guess the bottom line question for me is, if he presented a serious concern to the safety of patients during the period before the last day, because he had relapsed and was using fentanyl, why isn't he disabled? Because there was never any limitation in his ability to perform the material and substantial duties of his occupation. Even though he presented a serious concern for safety of the patients, there was no limitation on him? I think you have to look at the full statement of the employer. And I'll quote from it. She said his drug use seemed to come out of the blue that day as there were no signs at all that he was using drugs. There was no indication of drug use. There was no indication of limitation. He was working to the satisfaction of his employer in his job. And that is the perplexing thing. Does is this a case like Hampton versus Reliance Standard, where a truck driver had diabetes and because he had diabetes, he couldn't get a CDL license to continue to be a truck driver. But he otherwise said there was no evidence of limitation of his function or ability to work as a truck driver. Or is it something else? And our view is that this is like Hampton versus Reliance Standard. This court's decision in 2014, there is no evidence, just as in that case, where there is identification of physical limitation on ability to work as a truck driver. Here, there's no evidence of limitation other than he got caught using drugs on his last day of employment that he was disabled previously. There's no limitation in his work record. His work record was that he was satisfactorily performing it. There's nothing in the medical records. In his application, he pointed to treatment by a doctor, and I'm going to mess up this name, Schoepferster in Columbia, who apparently saw him on March 20th of 2017. And in the application for benefits, he said that Schoepferster, he went to Schoepferster and told him or was being treated for drug addiction. Schoepferster's records on that day are completely inconsistent. Those are in Appendix Volume 2, pages 333 to 343. He went to Schoepferster that day to establish care with a treating physician to get a refill of his blood pressure medication, Lisinopril, and because he had a spot on his face that he was concerned about. Schoepferster gave a complete interview of him, and in that interview, Mr. Bernard was asked about alcoholism. He said he had it previously, dry for greater than 10 years, no concerns currently. Had a history of intravenous drug use, clean now for greater than 10 years, no concerns currently. And then on page 334 of the appendix in Volume 2, Schoepferster has a narrative about the other conditions I mentioned and concludes the introduction that he had previously had a physician who he generally saw once a year for general exam and blood work, and when necessary, in between, but rarely would utilize. It had been greater than a year since he had last seen his prior physician. He had no acute concerns at this time. So that medical evidence, coupled with the employer's statement, are the critical facts in this case. There has to be evidence of limitation beyond a particular event on a particular day. And the reason he was fired wasn't because he was a drug addict, it was because he used that day, and that violated the employer's work policy. So I guess on that view, he was not disabled even after he was terminated or at the time of termination, because you say he was fine to work. If they didn't have this policy, it would have been fine to have a drug addict carrying out his duties. It wouldn't have been fine from a public policy standpoint, but it would have been lawful under the group insurance policy. Well, I say fine, I mean, it would have, he was not disabled from continuing in his position, even though he was a drug addict. Right, that's why this is the same position as Reliance Standard in Hampton versus Reliance Standard, the truck driver case. He could have driven a truck, but because he had diabetes, the public officials who gave him a CDL license said he couldn't, because that posed a risk. So this is that kind of case. I'm tempted to ask, Mr. Bannon, how many bites does this dog get? I'm not sure I understand your question, Your Honor. How many free bites, how many errors of medical judgment is he entitled to commit before he's disabled? Well, had there been evidence, if the employer had said, you know, we had some questions about him, because if you read the summary of the interview... In other words, under your view, would he be conscious to go back to work today if, in fact, he's not back there? I think he's 64, I guess he's 66 now. Don't quibble, Mr. Bannon. Please. I'm sorry, Your Honor. The question is not whether... How could the district court have been so wrong in this case? Pardon me, Your Honor? How was the lower court so wrong? How could any judge be so wrong about this case? Well, Your Honor, if she was appropriately applying the arbitrary and capricious standard of review, she would not avoid the evidence. She would have said, okay, do they have any reasonable basis to support this benefit, the benefit decision? And the answer is we did. We had the employer interview. We had no contemporaneous health records of treatment. Which basically goes to the fact that in your client's view, this man is competent, medically competent to proceed with his duties. No, Your Honor. The view of the client is that under the terms, conditions, and provisions of the group insurance policy and the welfare benefit plan, he's not entitled to benefits, which is a different question. Well, isn't it the same in the sense that he'd be entitled to benefits if he were not competent to keep working? He might have been entitled to benefits if he had established on the administrative record that there was a limitation in his ability to perform all of the material duties of his occupation. And that evidence was absent. I wanted to reserve two minutes for rebuttal, and if there are no more questions, I will save that two minutes for rebuttal. Thank you, Your Honor. You may. Mr. Still, there's something going on with your camera that is causing it to move about, which might provoke dizziness among your audience members. I'm sorry there, Your Honor. If you could stabilize that, it would be appreciated. There. Is that better? It's still jiggling some, but not quite not as much as it was earlier. Oh, OK. Your camera on some kind of a swivel? No, I have my iPad. We didn't have cameras on our actual desktop computer, and we tried this the other day. And I've used the iPad on other arguments in the district court, and it seemed to work all right. Is it stationary or are you moving the iPad around? I just hold it. Well, that's the problem. You're going to have to make it stationary. All right. When you're holding it, you're moving your arms and that moves the camera. Oh, OK. I'm sorry. You're going to need to lean it up against something and just. Yeah. All right. I'll try it here. I disconnected myself. Can you hear me? Yeah. It should be bringing me back up here, I guess. OK. There, am I back up? Yes. Is that good? Yes, that appears to be stationary. I think if you keep your hands off the iPad and just. Yeah, I am. OK. Speak toward it and we'll be in good shape. You may proceed with your argument. OK. May it please the court. I appreciate the opportunity. Yes, this, of course, it's a risk case. Mr. Bernard had been an anesthetist for many years. He and he had a history of drug abuse. Three doctors gave opinions in this case. And they all three said that he had the disease of a drug addiction. The facts, as you discussed, are correct that he some nurses thought that he was using the using drugs at work. They gave him a test and it was found that he had relapsed and we were choosing drugs. And then he was terminated and he was terminated because he was considered unsafe for his patients by the employer. I think the case Kansas City Life has had some kind of obtuseness in this case in that they say, well, you're being terminated for being unsafe to your patients. That has nothing to do with your work. Well, of course, it has to do with your work. He would qualify for benefits under the policy if he was unable to perform the material and substantial duties of his job, which, of course, he clearly is was in that he was would only be able to do so in a manner dangerous to the patients. So therefore, clearly, he would qualify under the under the terms of the of the policy. The statute in this in these cases requires the administrator, if he denies a claim to give specific reasons. Well, in this case, they did give specific reasons, but those were just not good reasons, not logical reasons. The first reason they gave was, well, he didn't go to the doctor after the relapse until after he'd been fired. So therefore, he had no coverage. Well, under either standard of review in this case, they have to make have a denial that is has a reasonable explanation. Well, no, no reasonable person would consider that first reason a reasonable explanation to deny benefits. The claim was that he had relapsed on fentanyl that made him dangerous to his patients and that therefore he qualified. The relapse certainly occurred while he was employed. And we know that not only based on his testimony, but on the fact that they gave a drug test while he was employed and he failed. It showed he'd been using fentanyl. The other reason they gave is was that you couldn't possibly be disabled, Mr. Bernard, because you didn't commit any errors or cause any injuries while you were working. So therefore, you had no impairment. And that goes into what you were just discussing previously with Mr. Bean. It seems to be their position that he could still be working as a anesthetist, even though he'd relapsed and and used fentanyl. Let's see, do you know whether any of these disability policies have exclusions for people who intentionally abuse drugs? I don't think I've seen one that particular language. There's two policies here, short term and long term. The short term policy doesn't exclude drugs. It lists about 12 things that are excluded. They include injury in a riot or something. I'm not suggesting this policy excludes it. I'm just wondering in the industry, that's a feature that's available that's not in this policy. I think it would. Well, I think they could. As far as I know, you could put in a policy in the policy anything to do with drugs. We're not covering it, but they didn't do that here. And then, of course, the long term disability policy provides 24 months of benefits if he's disabled from drug abuse. And he made the application saying, I've been disabled because of drug abuse. I'm considered dangerous to my patients. I can't work as an anesthetist. I qualify for the 24 months under the under the policy, which provides 24 months for disability arising from drug abuse. The. I think my example, and of course, I've been through it, that they denied saying, well, you haven't caused any injury. I think my hypothetical that I use that it's like a truck driver who has some kind of vision, ocular disease, and they give him a test and he can't pass the eye test. So it can't be a truck driver anymore. OK, that person was clearly would qualify for benefits. You couldn't shouldn't say, well, he has to crash into someone before he qualifies. Can't say to Mr. Bernard, you had to cause some injury or something or you don't qualify for benefits. He clearly was unable to perform the material and substantial duties of his occupation because of the relapse, which made him dangerous to his patients. So let's see the it's it's interesting that in the all the briefing that we've had on this case, the employer has or the Kansas City Life has not referred to this just at the end. I think they refer to this 24 month period for drug abuse. They also have never made any response to my example of the truck driver who has a failing vision. They do give an example in their in their reply brief. They said, well, this is like a construction worker. One time only consumes alcohol and then gets fired. The evidence in this case is that Mr. Bernard had been a addicted for many years. He'd suffered from this from this condition. He had a relapse and that he then was terminated, as we've discussed. And in their denials, they were required to give specific reasons. They never said that he didn't have this history of of drug abuse and drug addiction. And if they had it certainly refuted by all of the doctors, including the doctor that they hired, who Dr. Treating physicians, treating physicians, they filled out these claim forms that came from Kansas City Life. And they both treating physician said he can return to work as a anesthetist because he's had this relapse. And Dr. Russell said he agreed with that. Then he went on to say there wasn't evidence that he made any mistakes while he was working. But I think I think it's a clear case. I think the any reasonable person under either standard of review that we have, any reasonable person would have to say that this person was covered by a policy that paid 24 months of benefits. If he was disabled from drug abuse. And that the short term policy did not include drug abuse, although it could have. And that therefore is entitled to the short term disability policy and the 24 months under the long term disability policy. And I'll take any questions. You're not required to use all of your time. How much money are we talking about total? You know, be about two hundred thousand dollars altogether, judge, because he was a fairly he was a higher wage or high income earner. And if you put the short term and the long term disability policies together, it comes to one ninety nine. I see. All right. Thank you for your argument and thank you for adjusting the iPad. That made all the difference. OK, I'm sorry. I didn't know that wasn't doing that correctly earlier. Very well. Mr. Bean, we'll hear from you in rebuttal. Why don't you mute Mr. Still and unmute Mr. Bean. There we go. Thank you, Your Honor. I wrote unmute in big letters and then promptly ignored it. I think we got off the rails on the issue of job versus occupation. It is true that Mr. Bernard was terminated from his job because that was a rule that his employer had. The question that the company had to decide and the court had to consider is not whether he could do his job, but whether he could do his regular occupation. And in assessing that question, you have to determine whether there are limitations. The policy definition of disability says you are considered disabled when we review your claim and determine that due to your sickness or injury, you are unable to perform all the material and substantial duties of your regular occupation. And regular occupation isn't the particular job duties. No insurer insures jobs. They ensure what is the regular occupation in the national economy. And although he may have been drug addicted, there was no evidence from his performance as described by his employer that he was not performing the duties of his occupation as the employer expected. As to the issue that the court brought up about an exclusion for intentional use of drugs, I've been doing this for a long time and you do not see that in disability policies. You do see that occasionally in accidental death and dismemberment policies where a death caused by a DUI or an overdose of drugs, that's a fairly common feature. In the LTD policies, it's a benefit such as the one that Mr. Still was discussing, a limitation on either drug use or mental nervous disorder. I thank you for the opportunity to argue today and we request that you reverse the district court and enter judgment for Kansas City Life. Very well, gentlemen. Thank you both for your arguments. The case is submitted and the court will file an opinion in due course.